

IN THE
**TENTH COURT OF APPEALS**

**No. 10-23-00311-CV**

**IN THE INTEREST OF
T.S., L.S., AND D.S., CHILDREN**

**From the 52nd District Court
Coryell County, Texas
Trial Court No. DC-20-51857**

**MEMORANDUM OPINION**

On March 21, 2024, we issued an opinion and judgment in this cause. Appellant Mother filed a motion for rehearing. We deny Mother's motion for rehearing, vacate and withdraw our opinion and judgment dated March 21, 2024, and issue this opinion and accompanying judgment in their stead.

After a jury trial, Mother appealed the order terminating her parental rights to T.S., L.S., and D.S., and Father appealed the order terminating his parental rights to D.S.[1] The parents raise issues concerning the trial court's jurisdiction, ineffective assistance of

---

[1] Father's parental rights to T.S. and L.S. were terminated in a prior termination case in which he signed a voluntary relinquishment of his rights to both children. Any references to Father's parental rights in this opinion will pertain only to his rights to D.S. unless otherwise noted.

counsel of the children's attorney ad litem, dismissal of appointed counsel, sufficiency of the evidence to terminate Father's parental rights, and the trial court's ruling permitting the Intervenors to intervene in the suit.[2]  We affirm the judgment of the trial court.

## Background

On December 12, 2020, the Department of Family and Protective Services ("the Department") received a report alleging Mother had left four-year-old T.S. in the care of a registered sex offender and that T.S. wandered unsupervised across the street to a neighbor's house.  As part of the Department's investigation, Mother and all three children submitted to hair drug tests.  Mother and D.S. both tested positive for methamphetamine and amphetamine and L.S. tested positive for methamphetamine.

On December 29, 2020, the Department filed its original petition seeking conservatorship of T.S., L.S., and D.S. and seeking termination of Mother and Father's parental rights.  The trial court entered an order on the same day naming the Department as temporary sole managing conservator of the children.  Mother and Father were appointed counsel, and an attorney ad litem and guardian ad litem were appointed for the children.  All three children were eventually placed in a foster home with R.A. and

---

[2] Mother and Father's issues, as presented in this appeal, are arguably multifarious.  *See In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied) (observing that a multifarious issue or point of error is one that raises more than one specific ground of error).  Courts may disregard any assignment of error that is multifarious.  *Rich v. Olah*, 274 S.W.3d 878, 885 (Tex. App.—Dallas 2008, no pet.).  However, a reviewing court may consider a multifarious issue if it can determine, with reasonable certainty, the error about which the appellant wants to complain.  *Id.*  We will therefore address those issues about which we have determined with reasonable certainty the appellants want to complain.

M.A. ("Intervenors"), who had previously served as a foster placement for T.S. and L.S. in a prior termination case against Mother and Father.

Intervenors filed their petition in intervention on March 3, 2022. Shortly before the Department's statutory deadline expired, the Department requested a temporary orders hearing seeking to be dismissed from the case and requesting the trial court to appoint Intervenors as temporary managing conservators of the children. After a three-day hearing, the Department was dismissed and Intervenors were named temporary managing conservators of the children. The trial court discharged Mother and Father's court-appointed counsel as well as the court-appointed attorney ad litem and guardian ad litem for the children.[3] Shortly thereafter, Mother and Father each retained their own counsel; however, the parents' retained attorneys requested to withdraw from representation prior to trial. Because Mother and Father consented to their attorneys' withdrawal requests, the trial court granted the attorneys' motions to withdraw, and both Mother and Father proceeded to jury trial pro se.

After a three-day jury trial, the jury unanimously voted to terminate Mother's parental rights to all three children and unanimously voted to terminate Father's parental

---

[3] The record does not contain a separate written order releasing the court-appointed attorneys. In the record before us, our only written indication that the court-appointed attorneys were dismissed is in the order from the temporary hearing that concluded on June 23, 2022, which was entered on July 12, 2022. In the order, there were typed provisions stating that each of the court-appointed attorneys would continue their representation; however, each of these provisions were struck through and initialed, presumably, by the trial court. Nonetheless, the parties agree that the court-appointed attorneys for the parents and the children were released once the Department was dismissed from the suit.

rights to D.S. The trial court approved and incorporated the jury's findings into its Order of Termination, and appointed Intervenors as managing conservators of the children. Mother and Father timely filed their joint notice of appeal.

## Intervenors' Petition in Intervention

In her fourth issue, Mother contends that Intervenors did not establish standing to intervene in the Department's termination proceeding. She also claims that their intervention petition was untimely filed.[4] Mother raised both claims in her Motion to Strike Petition in Intervention in the trial court. We disagree.

## Standing

Because Intervenors' lack of standing would be dispositive in this case, we address this issue first.

STANDARD OF REVIEW

Standing is implicit in the concept of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A party's lack of standing deprives the court of subject matter jurisdiction and renders subsequent trial court action void. *In re Smith*, 260 S.W.3d 568, 572 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Whether a trial court has subject matter jurisdiction is a question of law, which we review

---

[4] Father does not list Intervenors' standing or the timeliness of Intervenors' petition as issues on appeal; however, he occasionally disputes these issues in his brief and raised them in his Motion to Strike Petition in Intervention in the trial court. To the extent that Father has raised these issues, we address his arguments and reach the same conclusion as we do herein for Mother's contentions.

de novo. *In Interest of H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). In our review of standing, we must take as true all evidence favorable to the challenged party, indulge every reasonable inference, and resolve any doubts in the challenged party's favor. *See Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). When a statute specifically confers standing, the statute itself serves as the proper framework for a standing analysis. *In re K.D.H.*, 426 S.W.3d 879, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

APPLICABLE LAW

A party's standing to file an original suit affecting a parent-child relationship is governed by Texas Family Code Sections 102.003 and 102.004(a). *See* TEX. FAM. CODE ANN. §§ 102.003 (general standing), 102.004(a) (standing for a grandparent or other relative of the child). However, Section 102.004(b) of the Family Code provides a relaxed standing rule by which parties who would not have standing to file an original suit may nonetheless intervene in a pending suit. *See Whitworth v. Whitworth*, 222 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2007, no pet.). This subsection gives the trial court permission, within its discretion, to grant a person who has had

> substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this chapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

TEX. FAM. CODE ANN. § 102.004(b). If the person seeking leave to intervene is a foster parent of the child, standing under this subsection is granted only when the person is the "foster parent of a child placed by [the Department] in the person's home for at least 12 months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. §§ 102.004(b-1), 102.003(a)(12).

To make the required showing under subsection 102.004(b), the party seeking to intervene must offer evidence of specific acts or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child. *Interest of K.J.*, 676 S.W.3d 186, 191 (Tex. App.—Tyler 2023, no pet.). The evidence presented must support a logical inference that the specific, identifiable behavior or conduct will probably result in the child being physically harmed or emotionally impaired. *Mauldin v. Clements*, 428 S.W.3d 247, 264 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Evidence that merely raises a surmise or speculation of possible harm is insufficient to establish that inference. *Id.*

DISCUSSION

Mother argues that Intervenors failed to establish that, at the time the intervention petition was filed, appointing either of the parents as managing conservators would have significantly impaired the physical health or emotional development of the children. Although the trial court apparently conducted a hearing on Intervenors' petition and the parents' motions to strike, we do not have a transcript of the hearing. Further, the trial

court did not make express findings of fact or conclusions of law regarding standing. When the trial court does not make separate findings of fact and conclusions of law regarding standing, we imply the findings necessary to support the judgment and we review the entire record to determine if the trial court's implied findings are supported by any evidence. *Id.* at 262–63. In granting Intervenors' petition to intervene and denying the parents' motions to strike, the court impliedly found that appointing Mother or Father as a managing conservator would significantly impair the children's physical health or emotional development.[5] We will thus review the entire record to determine if the trial court's implied findings are supported by any evidence. *See In re K.J.*, 676 S.W.3d at 192.

In this context, "satisfactory proof" means "proof established by a preponderance of the evidence as the facts existed at the time the suit or intervention was filed." *Compton v. Pfannenstiel*, 428 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2014, no pet). In determining whether a parent's acts or omissions constitute significant impairment, courts have considered factors such as "physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior on the part of the parent" and "parental irresponsibility, a history of mental disorders and suicidal thoughts, frequent moves, bad judgment, child abandonment, and an unstable, disorganized, and chaotic lifestyle that

---

[5] The trial court also implicitly found that the children had been placed in Intervenors' home by the Department for at least 12 months ending not more than 90 days preceding the date of the filing of the petition. The parties agree that Intervenors met this element of standing under Texas Family Code Section 102.004(b), and the record supports the determination that this element has been met. *See* TEX. FAM. CODE ANN. § 102.004(b-1).

In the Interest of T.S., L.S., and D.S. Page 7

has put and will continue to put the child at risk." *Thomas v. Thomas*, 852 S.W.2d 31, 35 (Tex. App.—Waco 1993, no writ); *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.). Although evidence of past misconduct, standing alone, may not be sufficient to demonstrate present circumstances forecasting substantial impairment, "a factfinder may infer the present fitness of a parent to be managing conservator from the parent's recent, deliberate past misconduct." *In re Mitchell*, 585 S.W.3d 38, 48 (Tex. App.—Texarkana 2019, no pet.).

At the time the intervention petition was filed, the record shows that Mother and Father had not demonstrated an ability to consistently maintain a stable, safe, and drug-free environment for the children. Mother's history with the Department shows a pattern of neglect and drug use that resulted in her parental rights to her two oldest children being terminated in 2016 and in removal of T.S. and L.S. in 2018 when L.S. tested positive for methamphetamine. T.S. and L.S. had only been returned to Mother's care for approximately seven months when the current case was initiated. A few days later, Mother tested positive for methamphetamine at a level of 100,473 ng/ml and for amphetamine at a level of 11,036 ng/ml. Hair samples taken from the children after their removal from Mother's care revealed that L.S. was positive for methamphetamine for the second time under Mother's care, and D.S. was positive for methamphetamine and for amphetamine. A few months later, Mother also tested positive for cocaine and admitted

to consuming "large amounts of alcohol" to cope with the consequences of her positive drug test on her visitation rights with her children.

The record also indicates that Father was absent for the majority of D.S.'s life and had only seen D.S. once or twice before the Department's removal proceedings. He left D.S. in the care and responsibility of Mother while he repeatedly abused methamphetamine and demonstrated a pattern of attaining short-term sobriety followed by relapse. Regarding these specific removal proceedings, Father attributed his delay in contacting the Department to going "on a binge" of using methamphetamine to cope with his grief over his mother's death. Father further testified at the temporary orders hearing that he may have used methamphetamine as recently as two weeks before he contacted the Department to get involved in the case.

In the absence of findings of fact and conclusions of law, and because the trial court is charged with making credibility determinations, we find that the implied findings necessary to support the trial court's determination that appointment of either of the parents as a managing conservator would significantly impair the children's physical health or emotional well-being were supported by the evidence. Therefore, Intervenors established standing to intervene. *See* TEX. FAM. CODE ANN. § 102.004(b).

### Untimeliness of Intervention

Mother asserts that the trial court abused its discretion by denying her Motion to Strike Petition in Intervention because Intervenors' petition was untimely filed.

We review a denial of a motion to strike under an abuse of discretion standard. *In re N.L.G.*, 238 S.W.3d 828, 829 (Tex. App.—Fort Worth 2007, no pet.). A trial court abuses its discretion when its action was arbitrary or unreasonable. *Id.* Furthermore, generally, an intervention is timely at any time before a final judgment. *See Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 36 (Tex. 2008); *Hisaw & Assocs. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.*, 115 S.W.3d 16, 21 (Tex. App.—Fort Worth 2003, pet. denied).

DISCUSSION

Mother argues that Intervenors' petition was untimely because it was filed after the parents had been granted unsupervised visitation with the children. Neither of the cases cited by Mother stand for the proposition that a trial court abuses its discretion by permitting an otherwise qualified person to intervene because the parents have been granted unsupervised visitation with the children. *See In re C.A.L.*, 02-05-00308-CV (Tex. App.—Fort Worth Feb. 15, 2007, no pet.) (mem. op); *L.J. v. Tex. Dept. of Fam. & Protective Servs.*, No. 03-11-00435-CV, 2012 WL 3155760 (Tex. App.—Austin Aug. 1, 2012, no pet.) (mem. op.). We note that the issue of whether unsupervised visitation was in the best interest of the children was contested by the parties to the suit. Intervention by foster parents may enhance the trial court's ability to adjudicate what is in the best interest of children involved in a parental termination suit. *See In re N.L.G.*, 238 S.W.3d 828, 830 (Tex. App.—Fort Worth 2007, no pet.). "Given that the family code grants standing to

foster parents to intervene in a suit affecting the parent-child relationship, that the trial court was charged with determining the children's best interest in this case, and that Intervenor filed written pleadings to intervene prior to trial," we cannot find that the trial court's denial of Mother's motion to strike was arbitrary and unreasonable. *See In re C.C.W.*, No. 02-07-00384-CV, 2009 WL 51032 (Tex. App.—Fort Worth Jan. 8, 2009, pet. ref'd) (mem. op.). The trial court did not abuse its discretion in denying Mother's Motion to Strike Petition in Intervention. Accordingly, we overrule Mother's fourth issue.

### The Trial Court's Jurisdiction

In their first issue, Mother and Father assert that the trial court's order terminating their parental rights and appointing Intervenors as managing conservators of the children is void because a trial on the merits did not begin on or before the Department's statutory deadline of July 2, 2022. We disagree.

STANDARD OF REVIEW AND APPLICABLE LAW

Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *In Interest of H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). In a parental rights termination case brought by the Department, the trial on the merits must commence by the first Monday after the first anniversary of the date the court renders a temporary order appointing the Department as temporary managing conservator of the child. TEX. FAM. CODE ANN. § 263.401(a). However, the trial court may grant an extension and retain the suit on the court's docket for a period not to exceed 180 days after the one-year

dismissal date if extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the Department and continuing the Department's appointment as temporary managing conservator is in the best interest of the child. TEX. FAM. CODE ANN. § 263.401(b). If the court grants the extension, the court must render an order that schedules the new mandatory dismissal date, makes further temporary orders for the safety and welfare of the child, and sets the trial on the merits on a date not later than the 180th day after the original statutory dismissal date. *Id.* If the trial court does not commence the trial on the merits before the new dismissal date, the court's jurisdiction over the Department's suit is terminated and the suit is automatically dismissed without a court order. TEX. FAM. CODE ANN. § 263.401(c).

Although the deadlines outlined in the Family Code are jurisdictional in cases brought by the Department, the same is not true for individuals who have intervened in a suit brought by the Department and seek affirmative relief. *Interest of A.W.*, 623 S.W.3d 519, 522 (Tex. App.—Waco 2021, no pet.). Any party may intervene in a suit by filing a pleading, subject to being stricken by the court for sufficient cause on a motion of any party. TEX. R. CIV. P. 60; *Brook v. Brook*, 865 S.W.2d 166, 172 (Tex. App.—Corpus Christi 1993), *aff'd*, 881 S.W.2d 297 (Tex. 1994). Upon filing of the petition, an intervenor becomes a party to the suit for all purposes. *Brook*, 865 S.W.2d at 172. If a party is nonsuited or dismissed, an opposing party's right to be heard on a pending claim for affirmative relief may not be prejudiced. *See In re D.D.M.*, 116 S.W.3d 224, 231-32 (Tex. App.—Fort Worth

2003, no pet.). The trial court retains jurisdiction over a pending claim for relief if the trial court initially had subject matter jurisdiction. *Williams v. Nat'l Mortgage Co.*, 903 S.W.2d 398, 403 (Tex. App.—Dallas 1995, writ denied).

DISCUSSION

The Department filed an original petition seeking termination of Mother's and Father's parental rights on December 29, 2020. The trial court rendered an order naming the Department as temporary sole managing conservator of the children on the same date and calculated the initial mandatory dismissal date as January 3, 2022. Prior to the mandatory dismissal date, Mother's attorney filed a Motion to Extend Dismissal Date based on extraordinary circumstances. The trial court granted the motion and extended the dismissal deadline by 180 days to July 2, 2022. Meanwhile, Intervenors timely filed their Petition in Intervention in Suit Affecting the Parent-Child Relationship on March 3, 2022, requesting that Mother and Father's parental rights be terminated and that they be appointed managing conservators of the children. This constitutes a request for affirmative relief independent of the Department's cause of action. *See In re D.D.M.*, 116 S.W.3d at 232 ("A claim for affirmative relief is a pleading that states facts showing a cause of action independent of the plaintiff's claim. This would allow the party to recover benefits, compensation, or relief despite plaintiff's abandonment or failure to establish a claim.")(internal citations omitted).

The Department's suit was dismissed July 2, 2022.[6] Because the trial court initially had subject matter jurisdiction over the Department's suit, Intervenors' pending independent claims for affirmative relief survived the Department's dismissal. *See Interest of A.W.*, 623 S.W.3d at 522. As Intervenors are private individuals, the statutory jurisdictional deadline applicable to government-initiated termination cases did not apply to Intervenors' claims. *Interest of A.W.*, 623 S.W.3d 519, 522 (Tex. App.—Waco 2021, no pet.). Therefore, the trial court had jurisdiction to order the termination of Mother and Father's parental rights and appoint Intervenors as managing conservators of the children on September 20, 2023.[7] We overrule Mother and Father's first issue.

---

[6] The parents argue that the Department did not properly dismiss its case. At the conclusion of the temporary orders hearing on June 23, 2022, the trial court announced its intention to dismiss the Department as a party to the suit once the written order was prepared and signed. The written order, signed July 12, 2022, reflects that the Department was removed as managing conservator of the children and "released from any further duties or responsibilities," rather than a clear statement of dismissal of the Department's suit. Regardless, the Department's suit was automatically dismissed without court order upon expiration of its July 2, 2022 statutory deadline. *See* TEX. FAM. CODE ANN. § 263.401(c).

[7] We note here that, though not listed as an issue presented, Mother raises a jurisdictional claim that the suit from Comal County, in which the 207th District Court had entered an Order of Termination regarding T.S. and L.S. in 2020 and acquired continuing, exclusive jurisdiction over T.S. and L.S., was not properly transferred to this suit in Coryell County. Her claim is based on the motion to transfer in the present case not containing a certification that all other parties were informed of the filing of the motion. She cites Texas Family Code Section 155.204(a) in support of her argument, which applies to transfer motions filed under Section 155.201(a) (transfer of a suit for dissolution of marriage) or Section 155.201(a-1) (transfer of an adoption suit). Mother's argument is misplaced, as the motion to transfer in this case was filed under Section 155.201(d) (transfer of a court with continuing exclusive jurisdiction under Chapter 262), which contains no such certification requirement. TEX. FAM. CODE ANN. § 155.201(d).

## Dismissal of Court-Appointed Attorneys

In their third issue, Mother and Father assert that the trial court's denial of their requests to keep their court-appointed counsel after the Department was dismissed from the suit violated Texas Family Code Section 107.016, was an abuse of discretion, and denied them due process of law. *See* TEX. FAM. CODE ANN. § 107.016; TEX. CONST. ART. I, § 19. Mother also claims that the trial court abused its discretion in releasing the attorney ad litem for the children after the Department was dismissed from the suit. We disagree.

STANDARD OF REVIEW AND APPLICABLE LAW

In a parental rights termination suit filed by a governmental entity, indigent parents who oppose termination are entitled to a court-appointed attorney ad litem. TEX. FAM. CODE ANN. § 107.013(a)(1). The appointed attorney ad litem for the parent continues to serve in that capacity until the earliest of:

> (A) the date the suit affecting the parent-child relationship is dismissed;
> (B) the date all appeals in relation to any final order terminating parental rights are exhausted or waived; or
> (C) the date the attorney is relieved of the attorney's duties or replaced by another attorney after a finding of good cause is rendered by the court on the record.

*Id*. at § 107.016(2). In a government-initiated termination suit, the trial court must also appoint an attorney ad litem to represent the interests of the child and a guardian ad litem to represent the best interests of the child, or one attorney to serve in a dual role. *Id.* at §§ 107.011, 107.012, 107.0125. For as long as the child remains in the conservatorship of the Department, the trial court is required to continue the appointment of either the attorney

In the Interest of T.S., L.S., and D.S. Page 15

ad litem or the guardian ad litem, and may, in its discretion, continue the appointment of both. *Id.* at § 107.016(1).

In a private termination suit, appointment of counsel to indigent parents may occur in the trial court's discretion but is not statutorily mandated. *Id.* at § 107.021; *In re J.C.*, 250 S.W.3d 486, 487 (Tex. App.—Fort Worth 2008, pet. denied). Unless the court finds that the interests of the child will be represented adequately by a party to the suit whose interests are not in conflict with the child's interests, the trial court must appoint an amicus attorney or an attorney ad litem for the child in a private termination suit. TEX. FAM. CODE ANN. § 107.021(a-1). However, in making this determination, the trial court "may make an appointment only if the trial court finds that the appointment is necessary to ensure the determination of the best interest of the child, unless the appointment is otherwise required by [the Family Code]". *Id.* at § 107.021(b)(2). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). An abuse of discretion does not occur if some evidence of substantive and probative character exists to support the trial court's decision. *In re M.M.M.*, 307 S.W.3d 846, 852 (Tex. App.—Fort Worth 2010, no pet.).

Dismissal of the Parents' Court-Appointed Attorneys

Section 107.013 of the Texas Family Code only applies to termination suits that are government-initiated. TEX. FAM. CODE ANN. § 107.013. The trial court appointed counsel to represent Mother and Father on the same date the Department filed its original termination petition. Section 107.016 of the Texas Family Code allows the trial court to release a parent's court-appointed attorney ad litem when the government's suit affecting the parent-child relationship is dismissed. *Id.* at § 107.016. Here, the trial court did not release the parents' court-appointed attorneys until the Department was dismissed and removed as conservator of the children. Both parents were represented by court-appointed counsel for the duration of the Department's suit. Once the Department was dismissed, this case proceeded as a private termination suit based on Intervenors' pleadings, and the parents possessed no mandatory statutory right to appointed counsel. *See id.* at § 107.016(2)(A); *see also In re J.C.*, 250 S.W.3d 486 (Tex. App.—Fort Worth 2008, pet. denied). The trial court's dismissal of the parents' court-appointed attorneys did not violate Texas Family Code Section 107.016. *See* TEX. FAM. CODE ANN. § 107.016.

We next consider whether the trial court abused its discretion and violated the parents' due process rights in refusing to appoint counsel for the parents in the private

termination suit.[8]  *See* TEX. FAM. CODE ANN. § 107.021(a); *see also Lassiter v. Dept. of Social Svcs.*, 452 U.S. 18, 31-32 (1981) (holding the due process clause does not require appointment of counsel in every parental termination proceeding, and the decision of whether due process calls for appointment of counsel is best left to the discretion of the trial court, subject to appellate review).  "The phrase 'due process,' although incapable of precise definition, expresses the requirement of fundamental fairness," which must be determined on a case-by-case basis.  *In re B.L.D.*, 113 S.W.3d 340, 352 (Tex. 2003) (internal citations omitted); *see Lassiter*, 452 U.S. at 27-32.

Here, Mother and Father both filed motions requesting to keep their court-appointed counsel after the Department was dismissed from the suit.  After a hearing, at which all parties agreed the continued appointment of counsel for the parents was discretionary, the trial court denied the motions.  Within a few weeks of the trial court's order, Father retained the services of the same attorney who had previously been appointed to him, and Mother retained new counsel of her choice.  The retained attorneys represented the parents for approximately one year before filing motions to withdraw as counsel, citing as good cause that the parents could "no longer comply with the terms of

---

[8] In our original opinion, we disposed of the parents' due process claim through a waiver analysis. "Even a complaint that a party's due process rights have been denied must be preserved by a proper objection or request." *In re R.L.L.*, No. 04-18-00240-CV, 2018 WL 6069866, at *3 (Tex. App.—San Antonio Nov. 21, 2018, pet. denied) (mem. op.); *see* TEX. R. APP. P. 33.1.  The record does not show that Mother or Father raised a due process complaint with the trial court.  However, assuming without deciding that their due process complaint was preserved for our review, we vacate and withdraw our original opinion and issue this new opinion to address the merits of their due process complaint.

[the] Contract for Legal Services." Both motions to withdraw noted that the parents had not consented to the attorneys' requests to withdraw.

However, a few weeks before trial, the trial court held a hearing on the motions to withdraw at which both parents appeared. Despite the trial court expressing concern over permitting the retained attorneys to withdraw so close to the jury trial setting, both parents consented to their attorneys' withdrawals from representation. When the trial court asked whether new counsel would be retained, Mother responded, "[W]e really do not have the money to hire other counsel. So[,] we are just going to show up, and, you know, do the best that we can." Further, the trial court asked Mother, "You understand that this case is set for jury trial on September 18th?...And you're telling the Court that you're going to be prepared to go, and you're going to show up, and you're not going to try to continue the case if [retained counsel] gets out?" Mother responded, "Correct." The trial court also asked Father, "Are you prepared to go ahead with the trial if [retained counsel] withdraws?" Father responded, "Yes, I am." Neither parent requested that the court consider appointing them counsel.

Further, the record does not reflect that the lack of counsel resulted in a fundamentally unfair trial. Both parents effectively urged their positions and actively participated in the trial. Mother filed pre-trial motions, lodged numerous objections and successfully prevented certain pieces of evidence from admission, requested and obtained limiting instructions, and offered her own exhibits into evidence. Both parents

cross-examined several of Intervenors' witnesses. Notably, during trial, Mother informed the court that she believed all parties had an adequate amount of time to prepare for trial. Additionally, the legal issues in this case were not complex, and we cannot say that appointed counsel would have made a determinative difference. *See Lassiter*, 452 U.S. at 32-33. The Intervenors pursued each parents' termination under Ground D and Ground E. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (b)(1)(E). The facts supporting termination on these grounds involved the parents' personal histories with the Department, continuous drug use, and instability. Appointed counsel would not have made a determinative difference in the outcome of the case regarding those key facts. *See In re L.F.*, No. 02-19-00421-CV, 2020 Tex. App. LEXIS 3879, 2020 WL 2201905, at *34 (Tex. App.—Fort Worth May 7, 2020, no pet.) (mem. op.) (where termination was based on Subsections D, E, N, and O); *cf In re I.M.S.*, 679 S.W.3d 704 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (finding, where termination was based on (1) Subsection F and the petitioner failed to present evidence of the respondent's ability to support the children during the relevant twelve-month period, and (2) Subsection Q where the respondent failed to produce any evidence of how he would provide care for the child during his period of confinement, that counsel would have made a "determinative difference" and that the case presented "troublesome points of law").

Although the Intervenors' petition alleged statutory grounds that could support criminal charges against the parents, there is no indication in the record that criminal

charges stemming from the parents' relationship with the children were pending or forthcoming during the approximately two and a half years this case was pending. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (P), (R). Additionally, Dr. James Shinder, a psychologist who administered Father's psychological evaluation, testified as an expert witness at trial, and the parents' psychological evaluation reports were also admitted into evidence. However, Mother thoroughly cross-examined Dr. Shinder on his methodology and his potential bias against the parents as a psychologist contracted by the Department. Finally, although Mother and Father demonstrated a clear desire to contest the termination proceedings, this alone does not "tip the scales of due process" to entitle the parents to appointed counsel in this private termination suit. *See In re T.L.W.*, No. 12-10-00401-CV, 2012 Tex. App. LEXIS 2689, 2012 WL 1142475, at *6 (Tex. App.—Tyler Mar. 30, 2012, no pet.) (mem. op.).

Under the specific facts and circumstances of this case, we do not find that the trial court abused its discretion or violated the parents' due process rights by refusing to appoint counsel for the parents in the Intervenors' suit.

Dismissal of Children's Attorney Ad Litem

Mother does not claim that the trial court failed to make the necessary findings under Texas Family Code Section 107.021; rather, Mother contends that the trial court could not have properly found the children's interests were adequately represented by

any party to the suit because the parties were all "litigating their own personal interests."[9]

By granting the trial court discretion in a private termination suit to determine whether to appoint an attorney ad litem, the legislature implicitly decided that there are circumstances in a private termination suit in which an attorney ad litem is not required despite the adversarial nature of the proceedings. *See Interest of T.M.R.*, No. 13-21-00144-CV, 2021 WL 4998438, at *3-4 (Tex. App.—Corpus Christi 2021, no pet.) (mem. op.). Whether a party has an interest in the ligation does not end the inquiry of whether the trial court abused its discretion in failing to appoint an attorney ad litem for the children. *See In re B.W.*, No. 02-19-00009-CV, 2019 WL 2041808, at *7 (Tex. App.—Fort Worth May 9, 2019, no pet.) (mem. op.); *In re C.A.P.*, No. 04-12-00553-CV, 2013 WL 749825, at *2 (Tex.

---

[9] Although Mother listed the dismissal of the children's court-appointed attorney ad litem as an issue presented in her original brief, her argument addressed only the dismissal of the parents' court-appointed counsel. Mother briefly mentions the trial court's failure to appoint an ad litem for the children in the private termination suit in her reply brief.

The complaint that a party raises on appeal must match the complaint the party presented to the trial court. *In re J.C.*, 594 S.W.3d 466, 473 (Tex. App.—Fort Worth 2019, no pet.). We note that appellate courts have reached different conclusions as to whether the failure to appoint an attorney ad litem for the children in a private termination suit may be raised for the first time on appeal. *Compare Interest of A.E.J.*, 05-20-00340-CV, 2020 WL 5107293, at *11 (Tex. App.—Dallas Aug. 31, 2020, no pet.) (mem. op.) (concluding that failure to raise a timely objection to the trial court's refusal to appoint an attorney ad litem waives the issue for appellate review and that enforcing our preservation rules in this circumstance does not violate due process); *with In re D.M.O.*, No. 04-17-00290-CV, 2018 WL 1402030, at *2 (Tex. App.—San Antonio Mar. 21, 2018, no pet.) (mem. op) (concluding that a complaining party may raise a trial court's failure to appoint an attorney ad litem in a private termination suit for the first time on appeal due to the serious nature of parental termination proceedings); *In re K.M.M.*, 326 S.W.2d 714, 715 (Tex. App.—Amarillo 2010, no pet.) (same). Mother's Motion to Retain Court-Appointed Counsel and the subsequent hearing on the motion addressed only the proposed retention of her own court-appointed counsel after the Department's dismissal. Mother does not point us to, nor do we find, any evidence in the record that Mother objected to the trial court's decision not to appoint an attorney ad litem for the children in the private termination suit.

App.—San Antonio Feb. 27, 2013, pet. denied) (mem. op.); *In re R.J.C.*, No. 04-09-00106-CV, 2010 WL 816188, at *3 (Tex. App.—San Antonio Mar. 10, 2010, no pet.) (mem. op.). Based upon our review of the record, we determine that there is some evidence of substantive and probative character that indicates a party to the suit would adequately represent the children's interests and that their interests were not adverse to the children's interests. *See Interest of T.M.R.*, No. 13-21-00144-CV, 2021 WL 4998438, at *4-5 (Tex. App.—Corpus Christi 2021, no pet.)(mem. op.).

The record reflects that Intervenors sought termination of the parents' rights and adoption of the children primarily because they believed these actions to be in the best interest of the children. After T.S. and L.S. were returned to Mother's care following the 2018 removal, Intervenors terminated their foster license. They reinstated their license only after the Department requested they serve as the foster family again for T.S., L.S., and D.S. The foster father specifically noted his concern that Mother had completed all of her services in the prior removal case, yet the children had to be returned to foster care again due to neglect and exposure to illegal drugs. He emphasized the importance of permanency for the children, said the children consider Intervenors' home to be their home, and testified that the children had not indicated that they wanted to live with their parents. We find there was some evidence of substantive and probative character to support the trial court's decision in this case not to appoint an attorney ad litem for the children after the Department was dismissed from the suit. *In re M.M.M.*, 307 S.W.3d

846, 852 (Tex. App.—Fort Worth 2010, no pet.). Accordingly, we overrule Mother and Father's third issue.

**Insufficiency of the Evidence**

In his second issue, Father contends that the predicate findings under subsections 161.001(b)(1)(D) and (b)(1)(E) of the Texas Family Code, as well as the best interest finding, are not supported by legally and factually sufficient evidence. *See* TEX. FAM. CODE ANN. §§ 161.001 (b)(1)(D), (b)(1)(E), (b)(2). We find that Father did not preserve these complaints for appellate review. *See Interest of L.P.*, No. 10-23-00147-CV, 2023 WL 6633015, at *1 (Tex. App.—Waco Oct. 12, 2023, no pet.) (mem. op.).

PRESERVATION OF LEGAL AND FACTUAL SUFFICIENCY COMPLAINTS IN JURY PROCEEDINGS

To preserve a complaint of legal sufficiency of the evidence for appellate review in a jury trial, a parent must raise the legal sufficiency challenge with the trial court in one of five ways: (1) move for an instructed verdict; (2) object to the submission of a jury question; (3) move for a judgment notwithstanding the verdict; (4) move to disregard the jury's answer to a vital fact question; or (5) move for a new trial. *In re D.T.*, 625 S.W.3d 62, 75 n.8 (Tex. 2021) (citing *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985)). Furthermore, preservation of a factual-sufficiency challenge requires a motion for new trial. *Id.*; TEX. R. CIV. P. 324(b)(2). In this case, Father failed to challenge the legal sufficiency of the evidence by any of the means specified above and did not file a motion for new trial to challenge the factual sufficiency of the evidence. As a result,

Father has failed to preserve his legal and factual sufficiency challenges for appeal.[10]  *See id.*  We overrule Father's second issue.

## Ineffective Assistance of Counsel of Attorney Ad Litem

In her second issue, Mother claims that the children's court-appointed attorney ad litem provided ineffective assistance of counsel to the children.  Intervenors assert that Mother lacks standing to make this complaint on appeal.  We agree that Mother does not have standing on appeal to complain on the children's behalf about the performance of the attorney ad litem.  *See Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 150 (Tex. 1982) ("An appealing party 'may not complain of errors which do not injuriously affect him or which merely affect the rights of others.'").[11]  We overrule Mother's second issue.

---

[10]  We note that the Texas Supreme Court has held that due process demands that we review the evidence supporting findings under Grounds D or E when they are challenged on appeal even if we were to find that the evidence to support one of the other statutory grounds for termination was sufficient because termination of parental rights under these grounds "may have implications for ... parental rights to other children."  *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam).  Nevertheless, this ruling presupposes that Father has preserved the legal and factual issues for appeal in the first instance.  *See id*. ("When a parent has presented the issue on appeal, an appellate court that denies review of a section 161.001(b)(1)(D) or (E) finding deprives the parent of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children.").  Thus, the ruling in *N.G.* does not eliminate the long-established requirement of error preservation of legal and factual sufficiency issues in parental-rights termination cases decided by a jury.  *In re S.C.*, No. 02-18-00422-CV, 2019 WL 2455612, at *4 n.2 (Tex. App.—Fort Worth June 13, 2019, pet. denied) (mem. op.).

[11] Father briefly states that the attorney ad litem's failure to communicate with the parents "restricted my abilities as a father to have my son…returned to me."  To the extent that Father intended to claim ineffective assistance of counsel against the children's attorney ad litem with this statement, we find that he also does not have standing to complain of this alleged error on appeal.  *See Interest of L.P.*, No. 09-19-00421-CV, 2020 WL 7062328 at 11* (Tex. App.—Texarkana Dec. 3, 2020, pet. denied) (mem. op.) (finding that the parent did not have standing to complain about ineffective assistance of counsel when the complaint concerned the children's attorney ad litem, with whom the parent did not have an attorney-client relationship).

## Conclusion

Having overruled all issues raised by Mother and Father, we affirm the judgment of the trial court.[12]

STEVE SMITH
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
(Chief Justice Gray concurs)
Affirmed
Opinion delivered and filed July 11, 2024
[CV06]



---

[12] All pending motions are dismissed as moot.